**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
*mdb@kuzykclassactions.com*
2121 Avenue of the Stars, Ste. 800
Los Angeles, CA 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email: mdb@kuzykclassactions.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LAURA WILLIS ALBRIGO on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PEREG NATURAL FOODS INC.**<br><br>**Defendant** | **CASE NO.:** '26CV4746 BJC DDL<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

Plaintiff Laura Willis Albrigo ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Pereg Natural Foods, Inc. ("Pereg" or "Defendant") and on the basis of personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

## INTRODUCTION

1. This is a proposed class action on behalf of a California and a nationwide class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Pereg Turmeric Powder ("Product" or "Spice").

2. This action seeks to redress Defendant's false and misleading marketing claims that its Product is genuine turmeric when, in fact, it is not.

3. Defendant sells Turmeric Powder under the Pereg brand. The Product claims to contain one ingredient —Turmeric.



4. Plaintiff retained a laboratory specializing in botanical authentication to test Pereg Product samples from two different lots.[1] The analytical method employed Qualitative Botanical Microscopy per the USP DSC 2015 Monograph for Turmeric (QBD-ID Turmeric). The results of the tests unequivocally demonstrate that the samples do not conform to the histology for turmeric. In each instance rice starch was observed throughout the sample, rendering it materially adulterated.

5. Reasonable consumers must and do rely on manufacturers to honestly represent the qualities of their Products and their ingredients.

6. Consumers, like Plaintiff, have been deceived by Defendant's false and misleading claim that the Product is powdered turmeric. As a result of their reliance on Defendant's misrepresentations, Plaintiff and Class Members have suffered an ascertainable loss of money, including, but not limited to, out-of-pocket costs incurred in purchasing the Products that are not genuine, or having paid a price premium for the Products as compared to other ground turmeric products that are otherwise unadulterated and authentic.

7. Throughout the applicable Class Period, Defendant has falsely represented the true nature of its Products, and as a result of this false and misleading labeling, was able to sell these Products to thousands of unsuspecting consumers throughout California and the United States.

8. Defendant's conduct is in breach of warranty and violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § 17500, et. seq., and California Civil Code § 1750, et seq.

---

[1] Plaintiff conducted analytical testing on two Pereg Turmeric lot samples: Lot No. 2503042 (Expiration Date: 3-4-27) and Lot No. 2402212 (Expiration Date: 2-21-26).

## JURISDICTION AND VENUE

9. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Albrigo is a resident of San Diego, California and Defendant Pereg Natural Foods is New Jersey corporation with its principal place of business in Clifton, New Jersey. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

10. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district. Defendant has received substantial compensation for affected transactions and business activity in this judicial district.

## PARTIES

11. Plaintiff Laura Willis Albrigo is a resident of San Diego, California.

12. Ms. Albrigo purchased Pereg Turmeric on multiple occasions in the past three years, the last one of which was on March 12, 2026 though Amazon.com.

13. Ms. Albrigo made her purchase after reading and relying on Defendant's Product label, specifically the representation that the Product was ground turmeric.

14. Ms. Albrigo reasonably believed that the Product contained the single ingredient listed on the label, and was not otherwise adulterated by the substitution of other matters.

15. Ms. Albrigo believed that Defendant lawfully marketed and sold the Product.

16. Ms. Albrigo relied on Defendant's labeling and was misled thereby.

17. Ms. Albrigo would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth – *i.e.,* that the Product was not pure turmeric.

18. Ms. Albrigo was injured in fact and lost money as a result of Defendant's improper conduct.

19. Plaintiff and members of the Class have been economically damaged by their purchases of the Products because the Product advertising was deceptive and/or misleading under California laws and the Products are misbranded; therefore, the Products are worth less than what Plaintiff and members of the Class paid for them and/or Plaintiff and members of the Class did not receive what they reasonably intended to receive.

20. Defendant Pereg Natural Foods, Inc. is a New Jersey company with its principal place of business located at 25 Styertowne Rd., Clifton, New Jersey 07012. Pereg is responsible for the manufacturing, marketing and sales of the Product at issue in this litigation.

## GENERAL ALLEGATIONS

### A. SPICE ADULTERATION IS A PERVASIVE AND LONG-STANDING GLOBAL PROBLEM

21. Food fraud—the deliberate substitution, addition, tampering, or misrepresentation of food, food ingredients, or food packaging for economic gain—has plagued the food industry throughout human history. Some of the earliest reported cases of food fraud date back thousands of years and involved staples such as olive oil, tea, wine, and spices.[2] A more specific subset of food fraud, known as

[2] Congressional Research Service, *Food Fraud and "Economically Motivated Adulteration" of Food and Food Ingredients* (Jan. 10, 2014)("*Food Fraud and EMA*"), available at https://www.congress.gov/crs-product/R43358 (last visited May 11, 2026).

economically motivated adulteration ("EMA"), has been explained by the U.S. Food and Drug Administration ("FDA") as the "fraudulent, intentional substitution or addition of a substance in a product for the purpose of increasing the apparent value of the product or reducing the cost of its production, i.e., for economic gain." *Id.* The U.S. Pharmacopeial Convention ("USP") further defines EMA as "the fraudulent addition of non-authentic substances or removal or replacement of authentic substances without the purchaser's knowledge for economic gain of the seller." *Id.*

22. Spices are among the most frequently adulterated food categories in the world. According to the USP Food Fraud Database, spices account for approximately 19% of all reported cases of food fraud—making them the second-most-commonly adulterated food category. *Id.*

23. The *economic* adulteration of spices, the deliberate addition of cheaper, undeclared substances to increase profit margins, poses a distinct threat to consumers in that adulteration can rarely be discovered without the benefit of analytical testing. Common expressions of such adulteration include the substitution of cheaper botanical species for the labeled species, the addition of undeclared starches and flours (such as rice, corn, wheat, or cassava starch) to increase bulk weight, and the addition of colorants to mask the dilution of the genuine article.[3]

## B. TURMERIC IS AMONG THE MOST COMMONLY ADULTERATED SPICES IN THE WORLD

24. Turmeric is one of the most frequently adulterated spices. A comprehensive review conducted by the Botanical Adulterants Prevention Program ("BAPP") published in 2026 in the journal *Pharmaceutical Biology*, analyzed 48 scientific papers covering 2,235 turmeric products from six continents. The review

[3] Maquet, A. et al., *Results of an EU wide coordinated control plan to establish the prevalence of fraudulent practices in the marketing of herbs and spices*, EUR 30877 EN, European Commission Joint Research Centre (2021). Available at https://food.ec.europa.eu/food-safety/eu-agri-food-fraud-network/eu-coordinated-actions/herbs-and-spices-2019-2021_en. (last visited May 11, 2026).

found that approximately 20% of all turmeric products tested were adulterated—approximately 22% for dietary supplements and 20.4% for turmeric sold as a spice.[4]

25. Among the most pervasive forms of turmeric adulteration is the addition of undeclared starch-based fillers—including rice, corn, wheat, cassava, barley, oat, and rye in order to increase the bulk weight and volume of the finished product. Because these starches are far cheaper per unit weight than genuine turmeric, their undeclared addition allows fraudulent producers to sell less actual turmeric at a higher price.[5]

26. The addition of rice starch or other cereal starches to turmeric is a paradigmatic form of economically motivated adulteration. The adulterant is cheap and abundant and is similar enough in texture that it blends seamlessly into powdered turmeric. The undeclared presence of rice starch in a product labeled as turmeric constitutes a material deception: the consumer pays for turmeric and receives something less than turmeric.

## C. PLAINTIFF'S ANALYTICAL TESTING OF DEFENDANT'S PRODUCT

27. Plaintiff conducted analytical testing on Pereg Turmeric samples across two sample lots 2503042 and 2402212.

28. Confirmation of the botanical identity of Pereg Turmeric samples was undertaken by Qualitative Botanical Microscopy utilizing the USP DSC 2015 Monograph for Turmeric (QBD-ID Turmeric) which evaluates whether a sample

---

[4] Gafner, S. et al., *A scoping review of turmeric adulteration based on data from six continents*, Pharm. Biol. 64(1):87–107 (2026), available at https://www.tandfonline.com/doi/full/10.1080/13880209.2025.2606229 (last visited May 11, 2026).

[5] Quelal-Vásconez, M.A. et al., *The detection and determination of adulterants in turmeric using fourier-transform infrared (FTIR) spectroscopy coupled to chemometric analysis and micro-FTIR imaging*, Food Control (2022), available at https://www.sciencedirect.com/science/article/abs/pii/S0956713522002869 (last visited May 11, 2026).

conforms to the histological characteristics described in the USP Turmeric Monograph for the authentic botanical article.

29. The USP is a nonprofit scientific organization that develops and publishes standards to help ensure the identity, quality, and purity of food ingredients, dietary supplements, and pharmaceuticals. The USP monographs are recognized by FDA as authoritative standards for dietary supplement and food ingredient identity. Under 21 C.F.R. § 111.75, manufacturers of dietary supplements are required to verify the identity of dietary ingredients using at least one appropriate test or examination, and the USP microscopic identification test is among the methods recognized as appropriate for this purpose.[6] The same USP identity standards apply with equal force to conventional food products sold as single-ingredient botanicals—such as ground turmeric—because the histological characteristics of turmeric are the same regardless of whether the product is marketed as a dietary supplement or a culinary spice.

30. Qualitative botanical microscopy is a well-established, pharmacopeial method for verifying the identity of plant-based ingredients. The method involves preparing microscopic slides of the powdered sample and examining the cellular structures, tissue fragments, and other anatomical features visible under magnification. The analyst compares the observed structures against the reference description set forth in the USP monograph for the botanical article in question.[7]

31. The USP Turmeric Monograph describes the microscopic characteristics of authentic turmeric powder in detail. In contrast, rice starch has a markedly different microscopic appearance from turmeric's native starch.

32. Turmeric starch granules and rice starch granules are morphologically distinct and readily distinguishable under microscopic examination. The starch

---

[6]21 C.F.R. § 111.75(h)(2)(iii)("Microscopic analysis").

[7]USP Dietary Supplements Compendium (2015 ed.), Monograph: Turmeric (*Curcuma longa* L., Fam. Zingiberaceae); Loescher, F. et al., *Compendial Perspectives on Botanical Identity Testing*, J. Nat. Prod. (2026), available at https://pubs.acs.org/doi/10.1021/acs.jnatprod.5c01200.

granules native to *Curcuma longa* rhizome are 15 to 30 µm in size and flat or disc-shaped.[8] By contrast, rice starch granules are polygonal in shape, with an average diameter of less than 5 µm.[9] These, among other differences, make the two starches readily distinguishable by a trained botanical microscopist.

33. The QBD-ID method is a pass/fail identity test. The sample either conforms to the histological description set forth in the USP Turmeric Monograph, or it does not. If the microscopist observes anatomical features inconsistent with authentic *Curcuma longa,* such as the presence of starch granules from an exogenous source (*e.g.,* rice starch), the sample fails the identity test.

34. The results of Plaintiff's testing unequivocally demonstrate that the samples do not conform to the histology for turmeric (Curcuma longa) root. In each instance rice starch was observed throughout the sample, rendering each sample materially adulterated. The pervasive distribution of rice starch throughout the Product is consistent with the deliberate addition of a cheap filler — a classic form of economically motivated adulteration intended to increase the bulk weight of the product while reducing its actual turmeric content for economic gain.[10]

---

[8] USP Dietary Supplements Compendium (2015 ed.), Monograph: Turmeric (*Curcuma longa* L., Fam. Zingiberaceae).

[9] Chakraborty, I., et al., *Advanced microscopy techniques for revealing molecular structure of starch granules*, Biophys Rev. (2020) Jan 16 ("rice starch granules are polygonal in shape and their diameter on average is usually < 5 µm"), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC7040134/.

[10] Parvathy, V.A. et al., *Detection of plant-based adulterants in turmeric powder using DNA barcoding*, Pharmaceutical Biology, Vol 53 (2015), available at https://www.tandfonline.com/doi/10.3109/13880209.2015.1005756?url_ver=Z39.88-2003&rfr_id=ori:rid:crossref.org&rfr_dat=cr_pub%20%200pubmed#abstract ("Unlabeled materials in turmeric powder are considered as adulterants or fillers, added to increase the bulk weight and starch content of the commodity for economic gains"); Gafner, S. et al., *A scoping review of turmeric adulteration based on data from six continents*, Pharm. Biol. 64 (2026) (identifying undeclared diluents, including rice and other cereal starches, as among the most common adulterants in turmeric spice), available at https://www.tandfonline.com/doi/full/10.1080/13880209.2025.2606229.

### D. THE ADULTERATION OF TURMERIC WITH UNDECLARED FILLERS VIOLATES THE FEDERAL FOOD, DRUG, AND COSMETIC ACT AND CALIFORNIA'S SHERMAN LAW

35. The Federal Food, Drug & Cosmetic Act ("FDCA") is a comprehensive federal consumer protection statute that broadly regulates the sale of food, including dietary supplements, to the consuming public. 21 U.S.C §301. The FDCA broadly prohibits the misbranding of any food. 21 U.S.C. §331(b). A food is "misbranded" if, among other things, its labeling is false or misleading. 21 U.S.C. § 343.[11] More significantly, a food is adulterated: (1) if any valuable constituent has been in whole or in part omitted or abstracted therefrom; or (2) if any substance has been substituted wholly or in part therefor; or (3) if damage or inferiority has been concealed in any manner; or (4) if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight, or reduce its quality or strength, or make it appear better or of greater value than it is. 21 U.S.C. § 342(b). Pereg has violated both these cornerstone principles in several ways.

36. A food product labeled as "turmeric" that contains undeclared rice starch or other cereal starch fillers is adulterated under 21 U.S.C. § 342.

37. First, a food is adulterated under § 342(b)(1) "[i]f any valuable constituent has been in whole or in part omitted or abstracted therefrom." 21 U.S.C. § 342(b)(1). The addition of rice starch to turmeric necessarily means that less genuine turmeric—and therefore less curcumin, the valuable bioactive constituent of turmeric—is present in the finished product than a consumer would expect. The curcuminoid content that gives turmeric its distinctive color, flavor, and therapeutic value is diluted in direct proportion to the quantity of undeclared filler added. The consumer receives a product from which a valuable constituent—curcumin—has been partially "abstracted" through substitution with an inert starch filler.

[11] California's Sherman Food, Drug, and Cosmetic Law adopted the FDCA verbatim.

38. Second, a food is adulterated under § 342(b)(2) "[i]f any substance has been substituted wholly or in part therefor." 21 U.S.C. § 342(b)(2). The undeclared addition of rice starch to turmeric is, by definition, a partial substitution: a cheaper substance (rice starch) has been substituted for a portion of the labeled substance (turmeric). The consumer who purchases the product believes he/she is purchasing pure turmeric. In reality, a portion of the product he/she receives is not turmeric at all, but an undeclared, cheaper substitute.

39. Third, a food is adulterated under § 342(b)(4) "[i]f any substance has been mixed or packed therewith so as to reduce its quality or strength." 21 U.S.C. § 342(b)(4). The mixing of rice starch into turmeric directly reduces the product's quality and strength. Turmeric's "quality" is a function of its curcuminoid content, its flavor profile, and its purity as a single-ingredient spice. The addition of rice starch reduces each of these attributes. Its "strength," its concentration of the active curcuminoid compounds, is diluted.

40. A food product labeled as "turmeric" that contains undeclared rice starch or other cereal starch fillers is similarly misbranded under 21 U.S.C. § 343.

41. A food is misbranded "[i]f (1) its labeling is false or misleading in any particular." 21 U.S.C. § 343(a). A label that identifies the product as a single ingredient -- "turmeric" -- without disclosing the presence of rice starch is false or misleading because it affirmatively represents to consumers that the product is pure turmeric when it is not. The omission of a material fact — that the product has been diluted with rice starch — renders the label misleading. Under 21 U.S.C. § 321(n), labeling is misleading if it "fails to reveal facts material in the light of" the representations made or suggested by the label.

42. **Sherman Law Adoption**. While these fundamental violations of the FDCA serve to highlight the deceptive and misleading nature of Defendant's labeling, significantly, Plaintiff does not seek to prosecute or enforce any aspect of the FDCA. Each of the foregoing FDCA violations — misbranding (21 U.S.C. § 343) and

adulteration (21 U.S.C. § 342) — independently violates the Sherman Law, which incorporates the Food Drug and Cosmetic Act in its entirety by reference. Cal. Health & Safety Code § 110100. Each Sherman Law violation is, in turn, a predicate violation actionable under the "unlawful" prong of the UCL, as alleged in the Fourth Cause of Action below.

## REASONABLE CONSUMER

43. Defendant knew that the most important representation made on the Product's label is its statement of identity (*i.e.,* ground turmeric).

44. Reasonable consumers rely on product labels for their truth and accuracy and are entitled to do so without conducting independent scientific testing or ingredient analysis.

45. Reasonable consumers are not required, nor are they able, to conduct scientific research to verify the authenticity of listed ingredients, such as fragrance constituents, in order to verify the truthfulness of express label claims.

46. Nor are reasonable consumers required to discount or disbelieve prominent front-of-package representations based on the mere possibility that undisclosed ingredients may contradict those representations.

47. Instead, it is the responsibility of product manufacturers to ensure that express labeling claims are truthful and not misleading in light of the Product's actual formulation.

48. Plaintiff and Class Members reasonably believed that Defendant's prominent front and back label statement that the Product is exclusively ground turmeric was true.

49. By deceiving consumers about the nature, quality, and formulation of its Product, Defendant was able to capture market share from competing products and command a price premium, increasing its own sales and profits.

50. Consumers lack the ability to test or independently ascertain the presence of adulterants at the point of sale. Consumers therefore must and do rely on manufacturers to accurately disclose or avoid making misleading representations regarding the contents of their Products.

51. The Product is labeled, marketed, and sold as "turmeric." Consumers who purchase the Product reasonably expect that they are receiving turmeric—specifically, the ground, dried rhizome of Curcuma longa—and nothing else. The presence of undeclared rice starch means the Product is not 100% turmeric. Rather, it is a mixture of turmeric and an undisclosed, cheaper filler.

52. Curcuminoids are the bioactive compounds that give turmeric its distinctive yellow-orange color, its flavor, and its well-documented therapeutic and antioxidant properties. Rice starch contains no curcuminoids. Every gram of rice starch present in the Product is a gram of curcuminoid-free filler that displaces genuine turmeric. The result is a product with lower curcuminoid concentration than an authentic, unadulterated turmeric product of equivalent weight.

53. At the time Plaintiff and Class Members purchased the Product, they did not know, and had no reason to know, that the Product had been adulterated with rice starch rendering the label claim misleading, deceptive, and unlawful.

54. Plaintiff and Class Members would not have purchased the Product, or would have purchased it on different terms, had they known the truth.

**NO ADEQUATE REMEDY AT LAW**

55. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

56. Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

57. Broader Scope of Conduct. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws, which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of Plaintiff (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

58. Defendant continues to misrepresent the Product claiming it is ground turmeric thereby necessitating injunctive relief in order to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

59. Finally, this is an initial pleading. The adequacy and availability of all remedies, including legal and equitable, will not be resolved until the case is further advanced upon the closure of discovery, resolution of class certification and any potential summary judgment.

## ECONOMIC INJURY

60. Plaintiff sought to buy a Product that was lawfully labeled, marketed, and sold.

61. Manufacturers charge a price premium for products that are authentic. Defendant intentionally substituted cheap fillers in lieu of authentic turmeric for its own economic gain.

62. Plaintiff saw and relied on Defendant's misleading labeling of its Products.

63. Defendant knew or should have known that reasonable consumers would consider the representations material in deciding to purchase the Product.

64. Plaintiff believed that the Product was lawfully marketed and sold.

65. In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiff paid for a Product that he would not have purchased or, at a minimum, paid a price premium.

66. As a result of their reliance on Defendant's misrepresentations, Plaintiff received a Product that contained ingredients which he reasonably believed the Product did not contain.

67. Plaintiff received a Product that was unlawfully marketed and sold.

68. Plaintiff lost money and thereby suffered injury as he would not have purchased this Product and/or paid as much for it absent the misrepresentation.

69. Defendant knows that the authenticity of a product, especially a consumable single ingredient product such as the one here, is material to a consumer's purchasing decision.

70. Plaintiff altered her position to his detriment and suffered damages in an amount equal to the amounts he paid for the Product he purchased, and/or in additional amounts attributable to the deception.

71. By engaging in the false and deceptive conduct alleged herein, Defendant reaped and continues to reap financial benefits in the form of sales and profits from its Products.

72. Plaintiff, however, would be willing to purchase products labeled as ground turmeric again in the future, including Defendant's Product, should he be able to rely with any confidence on Defendant's marketing as truthful and not deceptive.

73. However, Plaintiff will not be able to purchase Defendant's Product in the future, even though Plaintiff would like to, since simply viewing the ingredient list on Defendant's Product will not be enough to prevent Plaintiff from being deceived.

## CLASS ACTION ALLEGATIONS

74. Plaintiff brings this action on behalf of himself and on behalf of classes of all others similarly situated consumers defined as follows:

a. **California:** All persons in California who purchased the Product in California during the applicable Class Period; [12]

b. **Nationwide**: All persons who purchased the Product in the United States during the applicable Class Period;

c. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.[13]

75. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

76. Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

77. Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

78. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

---

[12] Collectively referred to as "Class or Classes."

[13] The statute of limitations for Plaintiffs' claims under California Civil Code § 1750, *et seq*., and GBL §§349-350 is 3 years. Accordingly for these claims the Class Period begins 3 years prior to the date of the initial filing to the present. Plaintiff's claims under California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § 17500, *et. seq.,* and for breach of express warranty have a statute of limitations of 4 years. Accordingly the Class Period for these claims begins four years prior to the date of filing to the present.

79. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a. Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;
b. Whether Defendant omitted or misrepresented material facts in connection with the sales of their Products;
c. Whether Defendant participated in and pursued the common course of conduct complained of herein;
d. Whether Defendant has been unjustly enriched as a result of their unlawful business practices;
e. Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. (the "UCL");
f. Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");
g. Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");
h. Whether Defendant's actions constitute breach of express warranty;
i. Whether Defendant should be enjoined from continuing the above-described practices;
j. Whether Plaintiff and members of the Class are entitled to declaratory relief; and
k. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

80. Plaintiff's claims are typical of the claims of the Class, in that Plaintiff is a consumer who purchased Defendant's Product. Plaintiff is no different in any relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

81. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and she have retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

82. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will likely be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

83. In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

84. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
**Violation of Breach of Express Warranty**
**Cal. Com. Code §2313**

85. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

86. Plaintiff's express warranty claim is based on a violation of Cal. Com. Code §2313. Defendant was afforded reasonable notice of this claim in advance of the filing of this complaint.

87. Defendant made express warranties to Plaintiff and members of the Class that the Products they purchased were turmeric.

88. The turmeric powder representation is a specific, affirmative statement of fact regarding the Products' formulation which appears uniformly on every unit of the Product sold during the Class Period and was intended to, and did, become part of the basis of the bargain between Defendant and consumers.

89. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

90. Plaintiff and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

91. As alleged herein, the Products are adulterated by the material addition of rice starch fillers in lieu of authentic turmeric which is inconsistent with the express representation that the Product consists of a single ingredient — ground turmeric.

92. Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

93. Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain the full value of the advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

94. Plaintiff and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION

**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of the California Class)**

95. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

96. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

97. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

98. Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above,

Defendant engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

99. In accordance with California Business & Professions Code section 17203, and as Plaintiff lacks an adequate remedy at law, he seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

100. Through its unfair acts and practices, Defendant obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant made on its Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## THIRD CAUSE OF ACTION

**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of the California Class)**

101. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

102. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

103. A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

104. Defendant's acts and practices of mislabeling its Products in a manner to suggest they are ground turmeric is fraudulent.

105. As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Products.

106. In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, he seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

107. Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FOURTH CAUSE OF ACTION

**Unlawful Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of the California Class)**

108. Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

109. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

110. A business act or practice is "unlawful" if it violates any established state or federal law.

111. Defendant's labeling and marketing of the Products as a single ingredient (ground turmeric) constitutes an unlawful business practice within the meaning of the UCL because it violates California's Sherman Food, Drug, and Cosmetic Law, Health & Safety Code §111730 et seq.

112. Under the Sherman Act, a food is misbranded if its labeling is false or misleading in any particular. Health & Safety Code § 111330. California's Sherman Law expressly adopts the federal misbranding standard set forth in the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343.

113. Defendant labeled, marketed, and sold an adulterated product. Because the Product is adulterated under 21 U.S.C. §342 it violates the equivalent provision of California's Health & Safety Code §§ 110660, 110585.

114. Plaintiff does not seek to enforce the FDCA, nor does Plaintiff seek to impose requirements different from or in addition to those imposed by the FDCA. Plaintiff seeks to enforce California law that independently incorporates the federal misbranding standard and is actionable under the UCL.

115. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the Class suffered economic injury, including payment of a price premium for Products that were falsely marketed as "ground turmeric."

116. By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

117. Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

## <u>FIFTH CAUSE OF ACTION</u>

**False Advertising**
**Violation of California Business & Professions Code §§ 17500, *et seq*.**
**(On behalf of the California Class)**

118. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

119. Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

120. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

121. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

122. Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

123. As a result, and as they lack an adequate remedy at law, Plaintiff and the Class are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched and pray for relief as set forth below.

124. Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SIXTH CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq*.**
**(On behalf of the California Class)**

125. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

126. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

127. Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

128. The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

129. Defendant has violated, and continues to violate, the CLRA in at least the following respects:

a. §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

b. §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

c. § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

130. Defendant knew, or should have known, that the labeling of its Products as ground turmeric despite being adulterated violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

131. The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for their decisions to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or

omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

132. Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

133. Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

134. Plaintiff will serve a CLRA demand pursuant to Civil Code §1782 in conjunction with service of this complaint notifying Defendant of the conduct described herein and that such conduct is in violation of particular provisions of Civil Code §1770. Id Defendant fails to address Plaintiff's demand within 30 days, Plaintiff will amend her complaint to seek the full measure of damages provided under Civil Code §1780.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public requests an award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B. Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C. Compensatory damages for Causes of Action for which they are available.

D. Statutory penalties for Causes of Action for which they are available.

E. Punitive Damages for Causes of Action for which they are available.

F. A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G. An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest.

H. An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I. Such other and further relief as may be deemed necessary or appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: August 19, 2026

Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

*Counsel for Plaintiff*